## NELSON *v.* STATE.

4312            174 S. W. 2d 237

Opinion delivered October 4, 1943.

146

*Ross Mathis,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, C. J.  By information appellant was charged with receiving stolen property—two cows. One was owned by Grant Chandler, the other by John Pulse. The judgment of a year's sentence in the penitentiary is alleged to be erroneous (a) for want of substantial evidence, and (b) because ownership of the property was not established.

Nelson, a Negro residing at Howell, near Cotton Plant in Woodruff County, owned a truck and did custom hauling. He also operated a small cafe where cold drinks and sandwiches were sold. Admittedly Nelson transported the cows to Memphis and sold them. When asked whose they were he replied, "Arthur Williams."[1] Payment was $25 in money and a check for $65.41 to Williams by Lightfoot-Howse Commission Company. Appellant says he signed the sales ticket "Marshall Nelson."

Appellant's explanation is that Mack Roberson and another Negro introduced to him as Mack Henderson contacted him in Cotton Plant. Roberson said a friend wanted him (Nelson) to haul two cows to Memphis. It was agreed appellant should call at Roberson's house at 6:00 Monday morning, January 12. Roberson lived on a paved road, but the cows were a mile from the highway. When appellant arrived near Roberson's home, the latter and Henderson had brought the cows up for loading.

---

[1] "Arthur Williams" appears to have been fictitious.

Nelson said he asked whose they were and was told that it did not make any difference, that "we are responsible for them." In answer to the same question put a second time, Roberson replied, "Arthur Williams." Roberson accompanied appellant to Memphis.

After receiving payment, appellant put the money, check, and sales ticket in his pocket and started with Roberson for Cotton Plant. He offered the check and a part of the money to Roberson, intending to retain $20 as service compensation. He says Roberson told him to keep the check until they reached West Memphis, where Roberson knew Henry Simmons, market manager for a Kroger store. Roberson had previously cashed checks there. Appellant testified that when Simmons looked on the back of the check and saw it was not endorsed, he (Nelson) was directed to sign it "Arthur Williams," which he did. On the way home appellant gave Roberson his portion of the proceeds.

Simmons testified that Roberson, whom he knew, entered the store with Nelson and told him he had a friend who wanted to cash a stockyard check. Nelson, he said, represented himself to be Arthur Williams, and as Williams signed the check.[2]

Chandler's testimony was that about January 11, 1943, he lost a cow that ranged with others. Aided by a friend, Chandler found where cattle had been loaded [on a truck or wagon]. He became suspicious and notified officials. The estray was a roan cow with tag in one ear: —"not much of a blue roan, but it might have been sort of a [mulley] strawberry roan." The cow was never recovered. Chandler further testified that Roberson's reputation was bad.

Pulse lost a jersey cow. It had one "broken-off" horn. The animal disappeared about the tenth of January.

Roberson, who testified that he made crossties, cut wood, farmed, and did "first one thing and another,"

---

[2] The record is not clear in respect of physical possession of the check at the time Nelson and Roberson asked Simmons to cash it. However, the inference is that Nelson had the check and that Roberson carried on the negotiations.

saw appellant in Cotton Plant during the early part of January. Nelson asked Roberson if he needed money, and the latter replied affirmatively. Nelson, after commenting that he would look out for something, discussed with Roberson a plan to haul the two cows. Nelson told Roberson that on the morning in question he would identify himself by blinking the truck headlights when he came "up the hill out of the bottoms."[3] Roberson helped load the animals, but insisted he did not know the owner; that he got the cattle west of Mack Henderson's. He was not acquainted with anyone named Arthur Williams. He and Nelson left "down on the bayou road" about 5:00 for Memphis. The witness denied asking Simmons to cash the check, although he admitted having been in the Kroger store "a time or two." Roberson asserted that Simmons did not know him. His agreement with Henderson and Nelson was that they steal the cattle and haul them to Memphis. About a month prior to the time he testified, Roberson had been arrested for stealing cattle. He made an appearance bond, and shortly thereafter "the cattle turned up." Roberson very emphatically denied being implicated.

Regarding identification, Roberson testified that neither cow was a mulley: that if one had a horn remnant he did not see it: "When we put the rope on, there were horns there." He then said that if one of the cows had a knocked-off horn a stub remained where he put the rope on. As near as the witness could judge, one of the cows was a dark brown "mixed jersey." He thought the other was "a kind of a pied gray." He did not know what kind of cow would be called "roan."

The testimony was heard by jurors, some of whom, (presumptively) if not farmers, were sufficiently informed in respect of cattle, their brands, markings, and the ordinary methods of identification, to satisfy all that the property stolen belonged to Pulse and Chandler. Certainly circumstances attending Nelson's so-called employ-

[3] In a statement signed February 10, appellant said he had been hauling cattle for Roberson at $1 per hundred pounds, but "they told me they were going to do a little better on this load and pay me $20 for the trip." There was other testimony that Nelson received $30 from proceeds of the sale—an amount approximately equal to a third.

ment were such as to put a reasonably prudent person on notice that the cows had been stolen. He must have known Arthur Williams was not the owner, yet Simmons testified that the defendant represented himself to be this unaccounted-for person. While there is some conflict in descriptions, the jury was not without substantial evidence upon which to base its verdict.

Affirmed.